CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 08 2015

JULIA C. DUDLEY, CLERK
BY: /s/
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DEANTHONY DOANE, | CASE NO. 7:14CV00539 |
| Plaintiff, | |
| v. | MEMORANDUM OPINION |
| HAROLD CLARKE, ET AL., | By: Hon. Glen E. Conrad |
| | Chief United States District Judge |
| Defendants. | |

DeAnthony Doane, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, which he later amended. Doane alleges that the defendant prison officials failed to protect him and used excessive force against him in retaliation for his filing grievances. Upon review of the record, the court finds that the defendants' motion for summary judgment must be granted on the grounds of exhaustion and qualified immunity.

## I. Background

In his amended complaint, Doane alleges the following sequence of events. On August 4, 2014, at about 9:20 a.m., Officers Wright and Walk came to Doane's cell at Keen Mountain Correctional Center to conduct a shakedown. The officers handcuffed Doane and then left him standing alone outside his cell for half an hour, unprotected from other inmates on the tier who were not handcuffed. Sgt. Robbin arrived ten minutes into this situation and directed Wright to some other post. Doane asked Robbin to uncuff him because he had enemies in the pod, his shoulder hurt, and his pants were falling down. Robbin ordered Walk to double-cuff Doane, although no medical order authorized her to do so, and directed Walk to charge Doane for any contraband discovered in his cell. Doane alleges that the officers left him unsupervised in retaliation for his earlier filing of grievances against Sgt. Robbin.

On August 10, 2014, Officers Cordle, Shelton, and Dowdy handcuffed Doane and escorted him to Robbin's office. Robbin asked Doane to withdraw an informal complaint he had filed about the August 5 incident, as the first step in the prison's grievance procedure. Doane refused. Dowdy and Cordle threatened to write false disciplinary charges against Doane to get him sent to another prison. Doane laughed. Dowdy grabbed Doane out of his chair, slammed him into a concrete wall, and rammed his forearm into the back of Doane's neck. Robbin told Dowdy to let Doane go, and Cordle and Shelton took Doane to segregation. On the way to segregation, Cordle twisted Doane's handcuffs and threatened that "if these cameras weren't here, you'd be dead." (Amend. Compl. ¶19, ECF No. 13.) Doane alleges that his face, temple, neck, and wrist were in pain as a result of the officers' actions.

Officers Cordle and Dowdy charged Doane with two disciplinary infractions related to this incident: gathering or approaching in a threatening manner, and killing or attempting to kill anyone. After an investigation by Internal Affairs, the disciplinary charges against Doane were dropped. He alleges that Warden Fleming was aware of this entire situation, but instead of releasing Doane to the general population, Fleming ordered that Doane be transferred to Red Onion State Prison, possibly in retaliation.

Doane asserts the following § 1983 claims: (1) Robbin left Doane handcuffed and at risk of attack from other inmates on August 5, 2014; (2) Dowdy and Cordle used excessive force against Doane on August 10, 2014; (3) Robbin, Cordle, Dowdy, and Shelton verbally threatened Doane in retaliation for his use of the grievance procedures; (4) Walk, Shelton, and Warden Fleming knew of, but failed to "correct" the misconduct by Robbin, Cordle, and Dowdy; and (5) Fleming failed to supervise, train and discipline the other defendants and failed "to develop an effective internal review process." (Id. ¶ 34.)

2

Defendants have filed a motion for summary judgment on the ground that Doane failed to exhaust available administrative remedies before filing this lawsuit, as required under 42 U.S.C. § 1997e(a) and that they are entitled to qualified immunity against his claims for damages. Doane has responded to defendants' motion, making the matter ripe for disposition.[1]

## II. Discussion

An award of summary judgment is appropriate when "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For a party's evidence to raise a genuine issue of material fact sufficient to avoid summary judgment, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In making this determination, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party." Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994).

### A.

Defendants first argue that they are entitled to summary judgment, because Doane failed to exhaust administrative remedies properly before filing this action as required under 42 U.S.C. § 1997e(a). The court agrees.

The Prison Litigation Reform Act ("PLRA"), among other things, provides in 42 U.S.C. § 1997e(a) that a prisoner cannot bring a civil action concerning prison conditions until he has first exhausted available administrative remedies. Porter v. Nussle, 534 U.S. 516, 524 (2002).

---

[1] Doane has moved for discovery related to the merits of his claims, and the defendants have moved for a protective order. Because the court herein determines that Doane's complaint must be dismissed because he failed to exhaust administrative remedies and the defendants are entitled to qualified immunity, his motions regarding discovery will be dismissed as moot. See also Siegert v. Gilley, 500 U.S. 226 (1991); Harlow v. Fitzgerald, 457 U.S. 800 (1982) (finding that district court, upon summary judgment, should not require defendants to respond to discovery requests until deciding threshold immunity question).

3

To comply with § 1997e(a), an inmate must follow each step of the established administrative procedure that the facility provides to prisoners and meet all deadlines within that procedure before filing his § 1983 action. See Woodford v. Ngo, 548 U.S. 81, 90-94 (2006).

Operating Procedure ("OP") 866.1 is the written administrative remedies procedure that inmates in VDOC facilities must follow to comply with § 1997e(a). An inmate must first attempt to resolve his issue informally by completing an informal complaint. The form states: "Only one issue per Informal Complaint." (See, e.g., ECF No. 23-1, at 19.) An official is to write a response on the bottom of the informal complaint form and return it to the inmate within fifteen days. The inmate can then initiate a regular grievance by submitting the grievance form, with the informal complaint attached.

A regular grievance must be filed within thirty days of the occurrence. The back of the form states several reasons that a regular grievance may be rejected at intake, such as raising more than one issue, raising a nongrievable issue, or being filed outside the required time period. If a regular grievance is not timely filed or is otherwise deficient, the intake officer will mark the deficiency on the back of the form and return it to the filer. The inmate may resubmit the grievance with the deficiency corrected, or he may appeal that intake decision within five days to the regional ombudsman, whose decision is final. This intake appeal, however, does not substitute for proper exhaustion of the OP 866.1 procedures: informal complaint, regular grievance, and available appeals.

If a regular grievance is accepted at intake as properly filed, then the warden or his designee will investigate and send the inmate a Level I response. If the responding official determines the grievance to be "unfounded," the inmate must appeal that holding to Level II, the regional administrator, for full exhaustion, and in some cases, to Level III.

4

The defendants bear the burden of proving the affirmative defense that Doane failed to exhaust available administrative remedies regarding his claims. Jones v. Bock, 549 U.S. 199, 212 (2007). "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008).

Doane alleges that he filed an informal complaint on August 8, 2014, complaining that Robbin had left him outside his cell in handcuffs on August 5, unguarded, while other inmates were in the pod. This August 8 form is not in the record, however.

On August 11, Doane filed another informal complaint form complaining that after the meeting with Robbin on August 10, he had received disciplinary charges as retaliation for refusing to drop the August 8 informal complaint. An official responded to the August 11 form on August 25, 2014, stating that Doane's informal complaint information was "being reviewed by investigator." (ECF No. 23-1, at 19.)

Doane then submitted a regular grievance dated August 26, 2014, describing the August 5 and August 10 incidents and demanding: reversal of all disciplinary charges received between August 5 and 10, return to "G.P./Honor Pod with job," and termination of all officers involved. (ECF No. 23-1, at 20.) The intake officer returned this regular grievance to Doane on August 27 with two deficiencies marked on the back: (a) disciplinary matters are not grievable under OP 866.1; and (b) the grievance included "more than one issue—resubmit with only one issue." (ECF No. 23-1, at 21.) Doane did not resubmit this grievance. He claims that he appealed the intake decision, but the regional director merely returned his grievance to him. The defendants have no record of this appeal.

5

Doane also submits a copy of a regular grievance dated August 16, 2014, complaining that on August 10, Robbin, Cordle and Dowdy retaliated against him for filing an informal complaint about the August 5 incident by bringing false disciplinary charges against him. (ECF No. 1-2, at 1.) The August 16 grievance does not bear any signature from the Warden's Office, indicating that it passed intake screening. Doane does not submit the reverse side of this grievance, however, where the intake officer would have marked the deficiency on which he rejected it. This grievance is stamped as received on August 26, 2014, by the ombudsman service for the western region, but does not state any decision from the ombudsman.

Doane asserts that he has done all he could do to exhaust. The record as a whole shows otherwise. Both grievances in the record were defective, because they included multiple issues: unsafe handcuffing on August 5, retaliation on August 10, and disciplinary charges.

Doane complains that his regular grievances should have been accepted on intake, because the regular grievance form does not set a one-issue limit. He is mistaken. The back of the grievance form itself states that a grievance can be rejected for raising more than one issue. Moreover, the grievance returned to Doane on August 27 expressly informed him of this defect and directed him to resubmit, raising only one issue. Doane failed to comply with this express direction, although he had time under the procedural deadlines to do so. Even if Doane appealed the intake rejections of his grievances to the regional ombudsman, as he alleges, those appeals do not constitute exhaustion of available remedies, which requires pursuing a properly formulated, regular grievance to Level I and Level II.

Doane also argues that his submission of each grievance directly to the warden's office satisfied his obligations under OP 866.1. He contends that if the warden chose not to address the grievances and to send them to the intake officer instead, the warden's non-response should not

6

be held against Doane. This argument lacks merit. For exhaustion purposes, Doane must comply with established grievance procedures, including the grievance intake process. Woodford, 548 U.S. at 90-94. He cannot merely deem his own regular grievances as properly filed when he directed them to the warden, instead of the intake officer as the procedures require.

In short, the court finds no genuine issue of material fact in dispute on which Doane could prove that he complied with the stages of the OP 866.1 process or that any state official prevented him from doing so. Because the evidence establishes that Doane did not file a properly formulated, one-issue, regular grievance about any of the issues raised in his § 1983 complaint, the court will grant defendants' motion for summary judgment under § 1997e(a).

### B.

The court also concludes that defendants are entitled to summary judgment on their alternative defense. Because Doane has not alleged facts stating any constitutional violation, defendants are entitled to qualified immunity against his claims for damages, and the court will dismiss his claims accordingly.

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (citing Saucier v. Katz, 533 U.S. 194, 206 (2001), overruled in part by Pearson v. Callahan, 555 U.S. 223 (2009)). Qualified immunity involves a two-step inquiry: (a) whether the plaintiff's allegations state a claim that defendants' conduct violated a constitutional or statutory right; and if so, (b) whether that right was clearly established. Saucier, 533 U.S. at 206. If the court determines that the facts alleged do not show that the officer's conduct violated a constitutional right, then the movant is entitled to summary judgment without further discussion. Id. at 201. Under the first facet of the Saucier analysis,

7

the court inquires whether the complaint and attachments allege "enough facts to state a [constitutional] claim to relief that is plausible on its face." Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (internal quotations omitted). The court must construe the facts in the light most favorable to the plaintiff, but "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Id. (internal quotations omitted).

It is well established that "the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Hudson v. McMillian, 503 U.S. 1, 5 (1992) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)). While prison officials must "take reasonable measures to guarantee the safety of the inmates," Hudson v. Palmer, 468 U.S. 517, 526-527 (1984), "[i]f a prisoner has not suffered serious or significant physical or mental injury as a result of the challenged condition, he simply has not been subjected to cruel and unusual punishment within the meaning of the Amendment." Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir. 1993).

Doane's first claim that Defendant Robbin left him handcuffed and unguarded for a time on August 5, 2014, states no Eighth Amendment violation. Because Doane does not allege facts showing that he suffered any serious physical or mental injury as a result of Robbin's challenged conduct on that date, he has stated no constitutional violation. Therefore, the defendant is entitled to qualified immunity under the first facet of Saucier, and the court will dismiss this claim.

In the excessive force context, the court must inquire whether officials, subjectively, applied force "in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm," and "[whether] the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." Hudson, 503 U.S. at 7-8

8

(internal quotations and citation omitted). "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. at 9-10 (internal quotations and citation omitted). An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim. Wilkins v. Gaddy, 559 U.S. 34, 38 (2010) (internal quotations and citations omitted).

In his second claim, Doane asserts that Dowdy and Cordle used excessive force against him on August 10. Doane essentially claims that these officers pulled and pushed him and twisted his handcuffs, actions which allegedly caused short-term pain to his face, neck, and wrist. He does not describe any particular injury, however.[2] These vague generalizations about the results of the defendants' use of force simply do not support a finding of any wrongdoing so "objectively harmful" as to support a constitutional claim of excessive force as defined in Hudson and Wilkins. Accordingly, the defendants are entitled to qualified immunity under the first facet of Saucier, and the court will dismiss this claim.

Doane next complains about the defendants' alleged verbal threats and retaliatory motives. Allegations of verbal abuse and harassment by prison officials do not state any constitutional claim cognizable under § 1983. Henslee v. Lewis, 153 Fed. App'x 179, 179 (4th Cir. 2005) (citing Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979)). Thus, even if Doane could prove that the officers made the ugly comments he alleges, their verbal remarks did not violate his constitutional right so as to satisfy that first facet of the Saucier standard.

---

[2] In Doane's sworn response on summary judgment, he vaguely alleges that from the August 10, 2014 incident, he suffers occasional dizziness, neck muscle soreness, and trouble with sleeping, nightmares, and panic attacks. He also complains that he was not allowed to see a nurse on the day of the incident, but does not describe any effort thereafter to seek medical attention for any of these alleged maladies.

Doane's allegations also do not support any § 1983 claim of retaliation. To state such a claim, the plaintiff inmate must allege facts supporting a reasonable inference that each defendant took the alleged retaliatory action because of plaintiff's exercise of a constitutionally protected right. Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Because inmates do not have a constitutionally protected right to a prison grievance procedure, Id., Doane's use of grievance procedures was not constitutionally protected and could not give rise to a § 1983 retaliation claim. See Daye v. Rubenstein, 417 F. App'x 317, 319 (4th Cir. 2011). Therefore, the defendants are entitled to qualified immunity under the first facet of Saucier as to his third claim, which the court will dismiss.[3]

In his fourth claim, Doane contends that Officers Shelton and Walk, as bystanders, should have stopped the other defendants from their allegedly unconstitutional acts. He also complains that Warden Fleming, after-the-fact, should have somehow corrected the harm that his officers caused to Doane. These individuals cannot be liable under § 1983 for failing to "correct" alleged constitutional violations that did not qualify as such, however.[4] Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977) (finding that under § 1983, "liability will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the

---

[3] Doane also alleges that the defendants' actions were based on his race. He alleges that Robbin left him cuffed and unguarded to retaliate against him because he is African-American. He offers an affidavit from Inmate Bayadi, who states that Robbin told him not to worry, because Bayadi is white, and she treated Doane as she did only because she "don't like n------ filing complaints on her." (ECF No. 1-2, at 5.) Doane also asserts in his summary judgment response that on August 10, Cordle or Dowdy made a "classical racial remark" before placing him against the wall. (ECF No. 30, at ¶ 10.) Doane does not mention race in any of his legal claims for relief, however. In any event, for reasons already stated, neither the verbal comments themselves nor the officers' actions related to these comments violated his constitutional rights.

[4] Doane also apparently believes that Warden Fleming wrongfully transferred him to Red Onion, a higher security level facility, based on the August 10, 2014, disciplinary charges that were dismissed. Well settled law establishes that prisoners have no inherent constitutional right to placement in any particular prison, to any security classification, or to any particular housing assignment. See Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Meachum v. Fano, 427 U.S. 215, 225 (1976).

10

plaintiffs' rights"). Therefore, these defendants are entitled to qualified immunity, and the court will dismiss this claim.

Doane's fifth claim alleges that Warden Fleming should be liable under § 1983 for unspecified policy failings regarding officer training and supervision before August 5, 2014. To prove supervisory liability, among other things, Doane must establish an affirmative link between the supervisor's alleged inaction or policy decision and the plaintiff's resulting injury. Slakan v. Porter, 737 F.2d 368, 376 (4th Cir. 1984). Doane has made no such showing here. Accordingly, this defendant is entitled to qualified immunity, and the court will dismiss this last claim.

### III. Conclusion

For the reasons stated, the court grants defendants' motion for summary judgment, based on Doane's failure to exhaust administrative remedies and on the ground of qualified immunity, and dismisses his claims. An appropriate order will issue this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff and to counsel of record for the defendants.

ENTER: This 7th day of December, 2015.

_____
Chief United States District Judge

11